IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EDMUND C. BITTNER, JR., | ) |
| Plaintiff, | ) |
| v. | ) 1:12CV1181 |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Edmund Bittner ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed his application for Supplemental Security Income Benefits on October 23, 2006 alleging disability as of that date. (Tr. at 22, 103, 98, 187-89.)[2] His application was denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #5].

initially (Tr. at 98) and upon reconsideration (Tr. at 99). Thereafter, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 132-34.) On January 31, 2008, Plaintiff, along with his attorney, an impartial vocational expert, and a lay minister, attended his administrative hearing. (Tr. at 103.) By written decision on May 20, 2008, the ALJ denied Plaintiff's claims. (Tr. at 103-113.) However, the Appeals Council subsequently granted review and remanded the case for further explanation and evaluation of whether substance abuse is a contributing factor material to the determination of disability, specifically including assessment of Plaintiff's functional capacities during any relevant period of abstinence. (Tr. at 115-116.) The case came before the ALJ for rehearing on December 16, 2010, and the hearing was attended by Plaintiff, his attorney, and an impartial vocational expert. (Tr. at 22.) The ALJ ultimately determined that Plaintiff's alcohol abuse was a contributing factor material to the determination of disability, and that he would not be disabled absent substance use. (Tr. at 36.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant has not engaged in substantial gainful activity since October 23, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: alcohol dependence, depression, alcohol-related seizures, history of cerebrovascular accident, chronic obstructive pulmonary disease (COPD), degenerative disc disease of the cervical spine, and degenerative joint disease of the right knee (20 CFR 416.920(c)).
> . . . .
>
> 3. The claimant's impairments, including the substance use disorder, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).
> . . . .

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
. . . .

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).
. . . .

6. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a wide range of light work as defined in 20 CFR 416.967(b).

(Tr. at 24-29.)

The ALJ then considered Plaintiff's age, education, work experience, and his residual functional capacity ("RFC"), and determined that, if Plaintiff stopped his substance use, he could perform a significant number of jobs in the national economy. (Tr. at 35.) Plaintiff therefore was not under a "disability," as defined in the Act, from the date of his application through the date of the decision. (Tr. at 36.)

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct

legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful

4

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his application date. He therefore met his burden at step one of the sequential

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

6

evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: alcohol dependence, depression, alcohol-related seizures, a history of cerebrovascular accident, chronic obstructive pulmonary disease (COPD), degenerative disc disease of the cervical spine, and degenerative joint disease of the right knee. (Tr. at 24.) The ALJ found that, absent substance abuse, Plaintiff's impairments did not meet or equal a disability listing at step three. (Tr. at 28.) He therefore assessed Plaintiff's RFC and determined that, if Plaintiff abstained from substance use, he could perform a light work with additional environmental and postural limitations. (Tr. at 29.) Because Plaintiff had no past relevant work to consider at step four of the analysis, the ALJ proceeded to step five, where he found that, absent substance use, Plaintiff retained the ability to perform a significant number of jobs in the national economy. The ALJ therefore concluded that Plaintiff was not disabled at any time from his application date through the date of the decision. (Tr. at 35-36.)

Plaintiff now claims that the ALJ erred in failing to discuss objective evidence which supports his allegations of disabling pain. Plaintiff also alleges that the ALJ failed to properly consider the opinions of Drs. Austin Hall and Sandy Kimmel and include those physicians' findings when questioning the vocational expert. Defendant urges otherwise and argues that substantial evidence supports the finding of no disability.

    A.    Objective Evidence of Pain

Plaintiff first contends that the ALJ erred by failing to address the results from a 2009 x-ray and a 2006 CT scan of Plaintiff's cervical spine. Both clearly document degenerative changes in his vertebrae. Specifically, the CT report noted "[d]isc and uncal vertebral

7

degenerative changes . . . at C4-5, with mild left neuroforaminal narrowing. No spinal cord narrowing. The facet and degenerative disc disease is present at the C5-6 level, with left mild and right moderate-to-severe neuroforaminal narrowing." (Tr. at 320.) Similarly, Plaintiff's x-ray findings were as follows:

> There is a slight retrolisthesis of C6 on C7 without fracture identified. Advanced discogenic degenerative changes are present at C5-C6 and C6-C7 with large bridging osteophytes present anteriorly. Milder degenerative changes are noted in the C4-C5 disc space. Prevertebral soft tissues are normal. No acute fracture is seen. Atlanto-dental interval is normal. Mild uncovertabral joint degenerative changes are present at C5-C6 and C6-C7, greater on the left.

(Tr. at 611.)

In considering this contention, the Court notes that "[a]n ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required," as does a selective discussion of "only that evidence that favors [the ALJ's] ultimate conclusion." Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995)(citing Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994)). However, an ALJ need not discuss every piece of evidence in making his RFC determination. See, e.g., Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Diaz, 55 F.3d at 307. Rather, he must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford [Plaintiff] meaningful review of the SSA's ultimate findings." Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003).

In this case, at the administrative hearing, the ALJ specifically asked for treatment records regarding Plaintiff's cervical condition. (Tr. at 47.) Plaintiff's attorney submitted the CT and x-ray results at that time, simultaneously describing those exhibits as illustrative of the degenerative changes in Plaintiff's cervical spine. (Tr. at 47-48.) Therefore, the ALJ was plainly aware of the

8

records in question and their relationship to the severity of Plaintiff's neck pain. In addition, the ALJ's decision addressed the CT and x-ray results, simply referring to them more generally as "radiological studies." (Tr. at 33.) The decision also addressed a more recent CT scan on Plaintiff's spine from July 21, 2007, which showed "mild degenerative osteophytosis at multiple levels" and "[m]inimal disc space narrowing . . . at C5/6 and C6/7." (Tr. at 32, 435-436.) After considering all of this evidence, the ALJ ultimately noted no clinical evidence suggesting nerve root compression (Tr. at 32, 33), and Plaintiff points to no such evidence either in the above reports or elsewhere in the record to support his allegations of disabling neck pain. Indeed, two reviewing physicians considered Plaintiff's 2006 CT scan results and mentioned the degenerative changes in Plaintiff's cervical spine when recounting the medical evidence as a whole. (Tr. at 414, 494.) Both of those physicians found that, despite the CT findings, Plaintiff remained capable of medium work. (Tr. at 408, 488.) The ALJ ultimately imposed even greater limitations. (Tr. at 34.) In short, substantial evidence supports the ALJ's decision regarding Plaintiff's cervical condition.

      B.      Physician Opinions

Plaintiff next argues that the ALJ failed to properly consider the opinions of Drs. Kimmel and Hall. Dr. Kimmel, a neurologist, conducted a consultative examination of Plaintiff on April 7, 2008. (Tr. at 499-507.) She issued a medical source statement finding that Plaintiff could occasionally lift and carry up to fifty pounds, but could stand and walk no more than an hour in an 8-hour workday. (Tr. at 499-500.) Dr. Kimmel also assessed multiple postural and environmental restrictions. (Tr. at 502-03.) When asked if the limitations specified have lasted

or will last for twelve consecutive months, Dr. Kimmel answered "Yes[, i]f patient continues to drink EtOH." (Tr. at 504.)

Because Dr. Kimmel was a one-time examiner, the ALJ assigned her opinion little weight. (Tr. at 34.) Plaintiff now contends that such reasoning is illogical, since the ability of an ALJ to reject an opinion for this reason alone would negate any motive for ordering consultative exams. (Pl.'s Br. [Doc. #11] at 7.) However, in the present case, Dr. Kimmel's assessment addressed Plaintiff's condition not only at a single point in time, but at a point in time when Plaintiff continued to abuse alcohol. In fact, Dr. Kimmel expressly confined her opinion of Plaintiff's limitations to a period during which Plaintiff continued to drink. (Tr. at 504.) Thus, Dr. Kimmel's findings fail to relate to the issue at hand here, i.e., Plaintiff's abilities absent substance abuse. This distinction is evident in reading the ALJ's decision as a whole. For example, in setting out the analysis of the opinion evidence, the ALJ first noted that the examining source statement of another examiner, Dr. Braxton, was made while Plaintiff continued to use alcohol and therefore had limited relevance to his ability to function absent use of alcohol. In the next sentence, the ALJ noted that Dr. Kimmel "also" provided an examining source statement that was a "one-time examination" and therefore was given little weight. The following paragraph likewise gives little weight to medical consultants' opinions because "they were formed during a time when the claimant was abusing alcohol." (Tr. at 34.) Given Dr. Kimmel's notation that her opinion applied to the period of time while Plaintiff continued to drink, and given the ALJ's inclusion of Dr. Kimmel's opinion in his overall analysis regarding the limited value of the opinions that were based on examinations while Plaintiff was using

alcohol, the Court finds a reasonable basis for the ALJ's conclusions. Substantial evidence therefore supports the ALJ's decision to omit Dr. Kimmel's findings from both his RFC assessment and his hypothetical questions to the vocational expert at step five.

The ALJ's treatment of Dr. Hall's opinion also provides no basis for remand. Dr. Hall, Plaintiff's treating psychiatrist, completed a medical source statement on June 10, 2009 in which he found Plaintiff markedly limited in terms of activities of daily living, extremely limited in maintaining social functioning, constantly deficient in maintaining concentration, persistence, or pace, and experiencing continual episodes of deterioration or decompensation. (Tr. at 657-61.) Although Plaintiff continued to drink alcohol heavily at the time of this assessment, the assessment form, signed by Dr. Hall, stated that "I attest that I have answered truthfully and accurately to the best of my ability, each of the questions presented in this Medical Source Statement rating the individual's capabilities independent of any impairment from alcoholism and/or drug additiction." (Tr. at 661.) However, two months later, on August 4, 2009, Dr. Hall completed a "care review" narrative and noted that Plaintiff's "primary problem certainly is his alcohol dependence and his other mental health symptoms are mild-to-moderate in severity at best, and I cannot rule out [that his mental health symptoms] may be entirely related to his alcohol use." (Tr. at 694.) Later the same month, Plaintiff entered a period of sobriety. (Tr. at 26, 31, 692.) Significantly, Dr. Hall found that (1) Plaintiff had no depressive symptoms or other mental health issues during this period and that (2) Plaintiff's "depressive symptoms may have been best explained by his alcohol use." (Tr. at 689-91.)

11

The ALJ, in examining the record as a whole, gave great weight to Dr. Hall's medical source statement as evidence of Plaintiff's functioning level while abusing alcohol. (Tr. at 26.) Plaintiff now challenges the ALJ's omission of Dr. Hall's certification that Plaintiff's limitations were "independent of any impairment from alcoholism." Plaintiff contends that the ALJ should have included all of the limitations opined by Dr. Hall when questioning the vocational expert. These contentions are without merit. Even if Dr. Hall's June 2009 statement could be read to include a prediction of continued, severe limitations absent alcohol use, as Plaintiff contends, Dr. Hall's subsequent treatment notes and findings belie that prediction. (See Tr. at 26-29, 689-90, 694.) The ALJ specifically considered Dr. Hall's treatment notes in this regard, noting that

> treatment records indicated that once sober, compliant with medications, and attending treatment, the claimant repeatedly presented with good grooming and hygiene, good mood, bright affect, well-organized and logical thought, and improved memory functioning. In fact, one treating source noted that the claimant's primary problem is 'certainly' the alcohol dependence, that the mental symptoms and limitations he suffers independent from the alcohol abuse were mild-to-moderate at worst, and that it was very likely all of his mental symptoms are attributable to the alcohol dependence.

(Tr. at 33-34.) The "treating source" referred to is Dr. Hall. (Tr. at 34, 689-699.) Thus, the ALJ clearly considered and relied on all of Dr. Hall's findings and opinions. In short, substantial evidence supports the ALJ's treatment of Dr. Hall's opinion and also supports the ALJ's decision to exclude the limitations from Dr. Hall's medical source statement when questioning the vocational expert.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #10] be

DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 10th day of February, 2015.

        /s/ Joi Elizabeth Peake
United States Magistrate Judge